IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

_____

| | | |
|---|---|---|
| AHMAD R. SHAYESTEH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05-CV-85 TC |
| | ) | |
| v. | ) | |
| | ) | |
| AARON RATY et al., | ) | O R D E R |
| | ) | |
| Defendants. | ) | |

_____

Plaintiff, Ahmad R. Shayesteh, an inmate at the Federal Correctional Institution in Fort Dix, New Jersey, filed this *pro se* lawsuit *in forma pauperis* under 28 U.S.C. § 1915.  *See* 28 U.S.C.A. § 1915(b) (West 2006).  Plaintiff's Complaint asserts numerous civil rights violations under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).  Plaintiff also alleges violations of the Right to Financial Privacy Act of 1978 (RFPA), *see* 12 U.S.C. §§ 3401-3422 (West 2006); the Federal Tort Claims Act (FTCA), *see* 28 U.S.C. §§ 2671-80; and, the Privacy Act, *see* 5 U.S.C. § 552a.  Prior to screening of the Complaint under 28 U.S.C. § 1915(e), Plaintiff effected service of process upon Defendants at his own expense.  Defendants responded with a motion to dismiss which has been fully briefed and is now before the Court.

I. Background

Plaintiff is an Iranian citizen and permanent resident of the United States.  In January, 1995, Plaintiff rented a safe-deposit box from a bank in Provo, Utah.  Plaintiff alleges that

he placed in the box $80,000 in U.S. currency, and a family heirloom consisting of diamonds worth approximately $4,000,000.00.  Plaintiff last accessed the box in May, 1995.  In June, 1995, Plaintiff was charged with two counts of possession of a controlled substance with intent to distribute.  On August 21, 1996, Plaintiff was convicted by a jury and was later sentenced to 262 months in prison and a $10,000 fine.

On May 2, 2002, Steve Gerard and other FBI agents, with the assistance of bank officials, allegedly broke into Plaintiff's safe-deposit box and searched its contents.  Plaintiff alleges that the agents also obtained personal financial information regarding Plaintiff from the bank at that time.  On May 14, 2002, Gerard allegedly transferred this information to Agent Raty of the Drug Enforcement Agency (DEA).

In early September, 2002, Raty filed an "Application and Affidavit for Seizure Warrant" in this Court which allegedly included information obtained from the bank, as well as information from a Presentence Investigation Report (PSIR) prepared in Plaintiff's criminal case.  Based on Raty's affidavit a magistrate judge issued a seizure warrant for the contents of the safe-deposit box.  After executing the warrant on September 6, 2002, DEA agents seized $72,100 in cash from the safe-deposit box.  No diamonds or additional funds were reportedly found or seized.  The DEA initiated forfeiture proceedings against the

$72,100 and Plaintiff contested the forfeiture by filing a claim with the DEA's Forfeiture Counsel.  On February 5, 2003, a Verified Complaint for Forfeiture In Rem was filed in this Court. *See United States v. $72,100 in United States Currency*, No. 2:03CV140DS.  Agent Raty attested to the truthfulness of the statements in the United States' forfeiture complaint. (2:03CV140DS Docket no. 1 at 7.)

On October 20, 2003, Plaintiff filed an answer to the forfeiture complaint in which he challenged, among other things, the legality of the alleged search and seizure of the contents of his safe-deposit box under the Constitution and the RFPA. (2:03CV140DS Docket no. 30)  Plaintiff also sought damages under the FTCA for the loss of the diamonds and additional currency allegedly missing from the safe-deposit box.  On September 16, 2004, Judge Sam dismissed Plaintiff's FTCA claim for failure to exhaust administrative remedies, however, Plaintiff's remaining challenges to the forfeiture action are still pending in that case.  After pursuing his administrative remedies with the FBI and DEA to no avail, Plaintiff filed this suit on February 11, 2005.

Plaintiff's Complaint is comprised of thirteen separate "counts" based on four separate causes of action.  Claims 1 through 8 (*Bivens* claims) assert violations of Plaintiff's civil rights by agents of the United States in their individual

capacities.[1]  Plaintiff seeks compensatory and punitive damages from these defendants for the loss of the diamonds and currency allegedly missing from his safe-deposit box.  Claims 9 and 10 seek damages under the Privacy Act against Assistant U.S. Attorney Richard W. Daynes, and U.S. Attorney Paul M. Warner, in their official capacities, as well as the United States Attorney's office.  Claims 11 and 12 seek compensatory and punitive damages against the FBI, DEA, and Agent Raty in his official capacity, under the RFPA.  Finally, Claim 13 seeks damages from the United States under the FTCA on theories of trespass, conversion and negligence.

## I. Motion to Dismiss

### A. Voluntarily Dismissed Claims

In his response to Defendants' Motion to Dismiss Plaintiff concedes that two of his claims are not well-plead and are subject to dismissal.  Plaintiff seeks leave to correct these deficiencies by amending his complaint.

Defendants argue that Claim 2, which purports to be a *Bivens* claim against Gerard in his official capacity, must be construed as a claim against the United States.  See *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).  Thus, Defendants argue that

---

[1] As further discussed below, although Claim 2 is against Gerard in his official capacity, Plaintiff concedes that official capacity suits are not permitted under *Bivens*, thus, Plaintiff seeks leave to amend the Complaint to restate this claim under the FTCA.

Claim 2 is barred by sovereign immunity. Plaintiff concedes that *Bivens* does not authorize suits against federal officials in their official capacities. However, Plaintiff argues that the United States has waved its sovereign immunity as to this claim, therefore, he seeks leave to amend the Complaint to restate this claim under the FTCA. Accordingly, the Court dismisses Claim 2 of the Complaint and grants Plaintiff's motion file an amended complaint.

Similarly, regarding Claim 3, Defendants argue that Plaintiff cannot sue Gerard individually under *Bivens* for wrongfully disclosing Plaintiff's financial information because Congress has created an alternative statutory remedy instead. Plaintiff concedes that "the [RFPA] provides the exclusive remedy for the actions of Defendant Steve Gerard in his individual capacity in Count 3." (Mem. Opp. Mot. Dis. at 2.) Plaintiff seeks leave to amend his Complaint to restate the allegations against Gerard from Claim 3 as part of Claim 11 under the RFPA. However, in light of the Court's ruling regarding Claim 11, set forth below, the Court dismisses Claim 3 without prejudice.

## B. Comity/Judicial Economy

Defendants argue that the issues presented in Claims 1, 5, 6, 8, 11, and 12 - which challenge the legality of the search and seizure of Plaintiff's safe-deposit box and financial records, and the adequacy of the procedures leading to the search and

seizure - have also been raised in the forfeiture action pending before Judge Sam.  Defendants also assert that the parties in both actions are the same because Plaintiff has made himself a de facto intervenor in the forfeiture action by claiming to be the owner of the defendant property in that case.  Thus, Defendants argue that as a matter of comity, and in the interest of preserving scarce judicial resources, these claims should be dismissed without prejudice pending the outcome of the forfeiture action.  Plaintiff denies that the issues presented in the forfeiture action are the same as those presented in Claims 1, 5, 6, 8, 11, and 12 here, and he also asserts that it is unlikely the forfeiture action will dispose of any of the claims presented here.

    The Court agrees that resolution of the forfeiture action will not necessarily dispose of all the identified claims, however, it will likely require determination of many of the same legal and factual questions presented in those claims.  And, such a determination could have preclusive effect on this litigation.  On the other hand, dismissal of these claims without prejudice may cause them to be barred under the applicable statute of limitations.  Thus, the Court denies Plaintiff's motion to dismiss without prejudice Claims 1, 5, 6, 8, 11, and 12, and, instead, stays these claims pending the outcome of the related forfeiture case.  Once that case is resolved, either party may

6

move to lift the stay and proceed on these claims.

### C. Remaining *Bivens* Claims

Defendants move for dismissal of Claims 4 and 7 on the basis of prosecutorial and/or qualified immunity.  In Claim 4, Plaintiff alleges that AUSA Daynes and DEA Agent Raty violated Plaintiff's constitutional rights by disclosing confidential information from Plaintiff's Presentence Investigation Report (PSIR) when applying for a seizure warrant.  In Claim 7, Plaintiff alleges that U.S. Attorney Warner and AUSA Daynes violated Plaintiff's purported constitutional right to privacy by filing the Verified Complaint for Forfeiture In Rem, which allegedly contained confidential information obtained from Plaintiff's PSIR.

The Federal Defendants' Memorandum in Support of Motion to Dismiss asserts that the individuals named in Claims 4 and 7 are absolutely immune from suit based on prosecutorial immunity.  It is well established that a prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution enjoys absolute immunity from suit.  *Imbler v. Pachtman*, 424 U.S. 409, 424, 96 S. Ct. 984, 992 (1976).  "It is also well established that this absolute prosecutorial immunity extends to . . . agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings."  *Pfeiffer v. Hartford*

*Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991).

Regarding Claim 7, Plaintiff does not dispute that Warner and Daynes' filing of the forfeiture complaint was a prosecutorial function. Nor does Plaintiff dispute that "prosecutorial immunity extends to proceedings where the prosecutor institutes a civil forfeiture proceeding." *Blakely v. United States*, 276 F.3d 853, 871 (6th Cir. 2002). Instead, Plaintiff argues that as a matter of public policy prosecutors should not be allowed to invoke immunity against a pro se litigant such as Plaintiff because doing so would remove a potential check on the prosecutors' power, namely the threat of having to pay attorney's fees. This argument is entirely without merit. Plaintiff has not cited a single case suggesting that a plaintiff's pro se status has any bearing on a prosecutor's entitlement to prosecutorial immunity. Thus, Defendants' motion to dismiss Claim 7 is granted.

Regarding Claim 4, Plaintiff contends that Daynes and Raty were not performing prosecutorial functions, but rather were acting in a an "investigative mode" at the time of the alleged privacy violations. Absolute immunity does not extend to actions that are primarily investigative or administrative in nature, unless those acts are "necessary for the prosecutor to fulfill his function as an officer of the court." *See id.* at 1490. Rather than dispute the issue of absolute immunity, Defendants'

reply memorandum asserts that Warner, Daynes and Raty are nevertheless entitled to qualified immunity against this claim.[2] Defendants also assert that the Court lacks jurisdiction to hear this claim because the Privacy Act's remedies preclude a *Bivens* claim.

It is well established that "[w]hen Congress provides an alternative remedy [to *Bivens*], it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the Court's power should not be exercised." *Bush v. Lucas*, 462 U.S. 367, 378 (1983). Defendants cite numerous cases holding that a Bivens claim should not be entertained where the Privacy Act provides a meaningful remedy for the injury alleged. *See Chung v. United States Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming district court's dismissal of plaintiff's *Bivens* claims "because . . . they are encompassed within the remedial scheme of the Privacy Act"); *Downie v. City of Middleburg Hts.*, 301 F.3d 688, 696 (6th Cir. 2002) (agreeing with district court that "because Privacy Act is a comprehensive legislative scheme that provides a meaningful remedy for the kind of wrong [plaintiff] alleges that he suffered, we should not imply a *Bivens* remedy"); *Newmark v. Principi*, 262 F. Supp. 2d 509, 518

---

[2] Defendants also raised the defense of qualified immunity in their initial supporting memorandum, albeit in a footnote.

(E.D. Pa. 2003) (holding that "based on the comprehensive remedial scheme provided by Congress in the Privacy Act," plaintiff could not maintain a *Bivens* action for disclosure of employment records); *Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191, 195 (W.D.N.Y.1996) (stating that a "'comprehensive scheme' for dealing with privacy violations exists in the Privacy Act").

The Court finds these cases persuasive and concludes that the Privacy Act provides the exclusive remedy for the injuries alleged in Claim 4 of Plaintiff's Complaint.  Thus, Defendants' motion to dismiss Claim 4 for lack of jurisdiction under *Bivens* is granted.  However, if Plaintiff so chooses, he may amend his complaint to restate the allegations of Claim 4 under the Privacy Act.

### D. Privacy Act

Federal Defendants' Memorandum in Support of Motion to Dismiss asserts that Claims 9 and 10, which seek relief under the Privacy Act, are barred by the state of limitations because the disclosures challenged in those claims occurred more than two years before Plaintiff filed his complaint in this case. Plaintiff's opposition brief argues that the under the doctrine of equitable tolling the limitations period did not begin to run until he first became aware of the alleged violations, which he asserts was less than two years prior to filing of the complaint. Defendants reply brief does not rebut Plaintiff's equitable

tolling argument but instead argues that Plaintiff's allegations fail to state a claim under the Privacy Act.

The Court notes that Plaintiff has not had an opportunity to address Defendants' argument that Claims 9 and 10 fail to state a claim because it was first raised in Defendants' reply brief.  In addition, Plaintiff may be able to amend his complaint to state a Privacy Act claim based on the allegations from Claim 4, as discussed above.  Thus, the Court finds that dismissal under Rule 12(b)(6) of Claims 9 and 10 would be premature at this time. Defendants may file a second motion to dismiss the claims after Plaintiff has had an opportunity to amend his complaint.

### E. Federal Tort Claims Act

Federal Defendants' Memorandum in Support of Motion to Dismiss also argues that Claim 13 was barred under the applicable statute of limitations.  However, in their reply brief Defendants concede that this claim was timely filed under the "mailbox rule."  Thus, Defendants admit that Plaintiff's claim of trespass under the FTCA cannot be disposed of in this motion to dismiss; Defendants have therefore requested leave to answer this claim following the Court's ruling here.  That request is granted.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendants' motion to dismiss without prejudice Claims 1, 5, 6, 8, 11, and 12 is **denied**; however, these claims are **stayed** pending a ruling in the related forfeiture proceeding;

(2) Defendants' motion to dismiss Claims 2, 3, 4, and 7 is **granted**;

(3) Defendants' motion to dismiss Claims 9, 10, and 13, is **denied**;

(4) Plaintiff shall have thirty days in which he may amend the complaint in compliance with this order; and,

(5) Defendants shall answer or otherwise respond to Plaintiff's amended complaint within sixty days from the date of filing.  However, if no amended complaint is filed, Defendants' answer to Plaintiff's remaining claims shall be filed within forty days from the date of this order.

DATED this 20th day of September, 2006.

BY THE COURT:

_____
Tena Campbell
United States District Judge