**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

---

| | |
|---|---|
| AHMAD R. SHAYESTEH, | |
| Plaintiff, | Case No. 2:05-CV-85 TC |
| v. | |
| AARON RATY et al., | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | |

---

Plaintiff, Ahmad R. Shayesteh, an inmate at the Federal Correctional Institution in Fort Dix, New Jersey, filed this *pro se* lawsuit *in forma pauperis* under 28 U.S.C. § 1915.  *See* 28 U.S.C.A. § 1915(b) (West 2006).  On September 20, 2006, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's Complaint.  The Court also granted Plaintiff leave to file an amended complaint but stayed certain claims pending resolution of the related forfeiture action (Case no. 2:03CV140DS).  This case is now before the Court on Plaintiff's Motion to Appoint Counsel, Federal Defendants' Motion to Lift Stay on Claims 1-4, and Federal Defendants' Motion to Dismiss Causes of Action 1-7 and 10 of the First Amended Complaint.

**ANALYSIS**

**I. Motion to Appoint Counsel**

Plaintiff has filed a motion for appointed counsel to represent him in this case.  Plaintiff argues that appointed counsel is necessary because prison officials have denied him adequate access to his legal materials and to law library resources.  Thus, Plaintiff asserts that federal officials are "preventing him from prosecution his claims and/or . . . hindering the prosecution of his claims."

Plaintiffs in civil cases do not have a constitutional right to counsel.  *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987).  However, a district court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1).  *See* 28 U.S.C.S. § 1915(e)(1) (2005); *Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  When deciding whether to appoint counsel, the court considers a variety of factors "including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'"  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996); *accord McCarthy*, 753 F.2d at 838-39.  "The burden is upon the

2

applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

Weighing the above factors, the Court concludes that appointed counsel is not warranted in this case.  First, at this early stage of litigation the merits of Plaintiff's claims are unclear, however, the present motion to dismiss suggests that many of Plaintiff's claims may lack merit.  Second, Plaintiff does not allege any present or ongoing harm which threatens Plaintiff's safety or well-being, necessitating prospective relief or prompt resolution on the merits.  Third, Plaintiff has demonstrated, both here and in numerous other cases in this district, that he is capable of adequately representing himself. Although Plaintiff generally alleges that his litigation efforts are being hindered by his incarceration he does not allege specific facts showing any actual prejudice; nor do Plaintiff's allegations show that his constitutional right to access the courts has been violated.  Finally, although some of Plaintiff's claims deal with seemingly arcane statutory provisions they do not involve complex legal issues which require formal legal training to comprehend.

Thus, Plaintiff's motion for appointed counsel is denied.

## II. Motion to Lift Stay

In its order of September 20, 2006, the Court stayed Claims 1, 5, 6, 8, 11, and 12 of Plaintiff's original Complaint. Plaintiff has restated these causes of action in Claims 1 through 4 of his First Amended Complaint.  These claims, brought under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), challenge the legality of the search and seizure of Plaintiff's safe-deposit box and financial records.  The Court found that resolution of these claims might implicate legal and factual issues likely to arise in the forfeiture action pending before the Honorable Judge David Sam. That action remains pending and is presently scheduled for trial in February 2008.

Defendants' motion to lift the stay on Claims 1-4 of the First Amended Complaint asserts that Defendants are unfairly prejudiced by the stay because Plaintiff has refused to cooperate in resolving the forfeiture action.  Defendants also assert that Plaintiff has unduly burdened Defendants in the performance of their official duties by causing this case to languish.  Thus, Defendants request that the stay on Claims 1-4 be lifted and that those claims be dismissed on the grounds cited in Defendants' Second Motion to Dismiss.  Plaintiff denies deliberately delaying

4

or obstructing the forfeiture case and argues that the stay should remain in effect.

A review of the docket in the forfeiture action confirms that Plaintiff has been less than diligent in moving that case forward.  In fact, the record reveals that Plaintiff came close to having his claim dismissed for failure to cooperate with discovery.  Although discovery seems to be moving forward once again, it does not appear that prompt resolution of the case is likely.  Moreover, the Court agrees that allowing these claims to remain stayed without considering Defendants' motion to dismiss would be unduly burdensome to Defendants.  Thus, the Court finds good cause to lift the stay in this case and consider Defendants' motion.

### III. Federal Defendants' Second Motion To Dismiss

<u>Claim One</u>

Claim One of Plaintiff's First Amended Complaint alleges that Defendant Gerard and unidentified FBI agents violated the Fourth Amendment by unreasonably searching and seizing Plaintiff's safe-deposit box without a warrant.  Gerard moves to dismiss this claim based on qualified immunity.  By asserting qualified immunity Gerard shifts to Plaintiff a "heavy two-part burden" of showing: (1) that Defendants violated a constitutional or statutory right; and, (2) that the right at issue was clearly

5

established at the time of the violation.

Gerard addresses only the first requirement, arguing that Plaintiff cannot show that Gerard violated Plaintiff's constitutional rights.  Specifically, Gerard argues that Plaintiff has not come forward with any evidence rebutting Gerard's sworn statement that he was not involved with any search of Plaintiff's safe-deposit box.  (Gerard Aff. at 11.) Plaintiff, on the other hand, points to the Verified Forfeiture Complaint In Rem, wherein Defendant Raty states that FBI agents, presumably including Gerard, went to Central Bank and "advised bank personnel to open [the safe-deposit box] according to bank policy and agents would observe."  (2:03CV140DS Compl. at ¶ 10.) Plaintiff asserts that this sworn statement contradicts Gerard's affidavit and creates a genuine issue of fact as to whether Gerard or other FBI agents played a significant role in the initial search.  Plaintiff also argues that by encouraging and observing the search, as stated by Raty, FBI agents "constructively" searched the box.  Although Plaintiff does not clearly explain or provide any legal support for his "constructive search" theory, the Court liberally construes Plaintiff's Amended Complaint to allege that bank officials were, in effect, acting as agents of the FBI, making the search government action under the Fourth Amendment.

6

Although Plaintiff has come forward with only minimal evidence and a somewhat vague legal theory showing a constitutional violation, the Court cannot conclude, based on the present record, that no genuine issue of material fact remains regarding whether Gerard violated Plaintiff's constitutional rights.  In addition, Plaintiff's argument regarding the degree of government involvement in the initial warrantless search of the safe-deposit box is likely to arise in the forfeiture proceedings in relation to the admissibility of certain evidence. Premature resolution of Claim One in this case would likely have preclusive effect on those earlier-filed proceedings.  Thus, the Court concludes that dismissal of Claim One is not appropriate on the present record, and this claim will remain stayed pending further developments in the forfeiture proceeding.

<u>Claims Two and Three</u>

Claims Two and Three of the First Amended Complaint allege violations of the Fourth and Fifth Amendments respectively, based on alleged misuse of information obtained from the Pre-Sentence Investigation Report (PSIR) prepared in Plaintiff's criminal case.  Defendants argue that *Bivens* does not provide a cause of action for these claims because Congress has created alternative statutory remedies for the alleged injuries.  Specifically, Defendants assert that the Privacy Act, *see* 5 U.S.C.A. §552a

(West 2007), provides a remedy for the injury alleged in Claim
Two--misuse of PSIR information to obtain a search warrant--
thereby precluding a separate *Bivens* claim.  *See Bush v. Lucas,
462 U.S. 367, 368-9 (1983)*.  Similarly, Defendants assert that
the Right to Financial Privacy Act (RFPA), *see* 12 U.S.C. § 3417,
rather the Fifth Amendment, provides the exclusive remedy for
violations of the statutorily created right to financial privacy,
as alleged in Claim Three.  *See United States v. Miller, 425 U.S.
435, 96 S. Ct. 1619 (1976)*.

Plaintiff appears to concede that Claims Two and Three are
not proper under *Bivens*.  In fact, Plaintiff's opposition
memorandum does not address Defendants' arguments regarding these
claims.  Moreover, Plaintiff's First Amended Complaint also
includes claims under the Privacy Act and RFPA based on
substantially the same facts alleged in Claims Two and Three.
Thus, the Court concludes that the allegations in Claims Two and
Three of the First Amended Complaint fail to state a claim for
relief under *Bivens*.  Defendants' motion to dismiss these claims
is granted.

<u>Claim Four</u>

Claim Four alleges that Defendant Raty deprived Plaintiff of
his property without due process of law, in violation of the
Fifth Amendment, by allegedly making false statements in the

8

Verified Complaint for Forfeiture In Rem filed in the forfeiture case.  Plaintiff alleges that as a result of Raty's false statements the currency seized from the safe-deposit box "may be forfeited and lost to him."  Plaintiff also alleges that he suffered "substantial costs, loss of opportunities, and injuries to his eyes and hands in defending the [forfeiture action]." (Am. Compl. at 15.)

To state a procedural due process claim under *Bivens*, a Plaintiff must allege that government officials: (1) intentionally or recklessly, (2) deprived the plaintiff of his property, and, (3) that there is no adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984).  Plaintiff's allegations do not satisfy the last two elements.  Regarding the second element, Plaintiff cannot show that he has been permanently deprived of the funds seized from the safe-deposit box while the forfeiture proceeding remains pending.  In addition, Plaintiff offers no legal support for his assertion that the incidental costs of pursuing his forfeiture claim are "property" under the Fifth Amendment.

Regarding the third element, Plaintiff cannot show that he was denied an adequate post-deprivation remedy because he has had ample opportunity to pursue his claim in the forfeiture action.  Plaintiff's only argument regarding the inadequacy of

the forfeiture proceedings is the unavailability of damages for incidental costs incurred in pursuing his forfeiture claim. This argument is unpersuasive.  The mere fact that pursuing a forfeiture claim may be burdensome or costly does not make the forfeiture proceedings inadequate in terms of due process.

Thus, the Court concludes that Claim Four fails to state a claim on which relief can be granted; it is, therefore, dismissed.

<u>Claim Five</u>

Plaintiff alleges in Claim Five that Defendants Daynes and Raty violated the Privacy Act, *see* 5 U.S.C.A. § 552a (West 2007), by wrongly disclosing information taken from the Pre-Sentence Investigation Report (PSIR) prepared in Plaintiff's criminal case.  More specifically, Plaintiff alleges that Daynes' disclosed to Raty information from the PSIR regarding Plaintiff's employment history and assets; and, that Raty later used this information in his Application and Affidavit for Seizure Warrant.  Plaintiff asserts that these disclosures were prohibited under the Privacy Act absent a court order or consent from Plaintiff.

Defendants move for dismissal of this claim arguing that the disclosures fall within an exception to the Privacy Act's general rule of "no disclosure without consent" found in §

10

552a(b)(1), which authorizes disclosure without consent "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."  The term "agency" is defined broadly under the Freedom of Information Act (FOIA) to include "any executive department," *see* 5 *id.* § 552(f)(1); therefore, the relevant "agency" in this case is the Department of Justice.

Plaintiff does not dispute that Daynes and Raty are both employees of the Department of Justice, nor does he deny that their sharing of information was an intra-agency disclosure. Thus, the only issue here is whether Daynes and Raty had a "need for the record in the performance of their duties."  Plaintiff argues that Defendants have not clearly shown that they needed the PSIR information to perform specific duties of their employment.  The Court disagrees.  The record clearly shows that the purpose for the disclosures in this instance was to pursue forfeiture of funds held under Plaintiff's name, a task which is clearly within Defendants duties as federal law enforcement officers.  And, the work history and asset information contained in the PSIR was clearly relevant to determining whether the funds might be subject to forfeiture.

Thus, the Court concludes that the disclosure challenged in Claim Five is exempt from the protections of the Privacy Act

under 5 U.S.C. § 552a(b)(1), and, Defendants are entitled to dismissal of this claim.

<u>Claims Six and Seven</u>

Claims Six and Seven also allege violations of the Privacy Act based on the use of PSIR information in pursuing forfeiture of the seized funds.  These claims name as defendants Assistant U.S. Attorney Daynes and former U.S. Attorney Paul M. Warner in their official capacities, as well as the United States Attorney's Office (USAO).  Defendants move for dismissal of these claims based on the "routine use" exception contained in the Privacy Act.  *See* 5 U.S.C.A. § 552a(b)(3) (West 2007). Under the "routine use" exception, an agency may disclose a record without consent if: (1) the routine use is published in the Federal Register; and, (2) disclosure of the record is for a purpose compatible with the purpose for which it was collected. *See* 5 U.S.C. § 552a(e)(4); 5 U.S.C. § 552a(b)(3); 5 U.S.C. § 552a(a)(7).

Defendants assert that the disclosures challenged here fall within the following "routine use" published by the Department of Justice in the Federal Register:

(p) A record, or facts derived therefrom, may be disseminated in a proceeding before a court or adjudicative body before which the United States Attorney's Office is authorized to appear, when the United States, or any agency or subdivision thereof, is

> a party to litigation *or has an interest in litigation* and such records are *determined by the United States Attorney's Office to be arguably relevant* to the litigation;

Privacy Act of 1974; [Notice of Modified Systems of Records, 63 Fed. Reg. 8,659, 8,667-68 (Feb. 20, 1998), 1998 WL 66517](#)

(Emphasis added).  Defendants assert that the employment and financial information in the PSIR were determined by the USAO to be "arguably relevant" to the initiation of forfeiture proceedings by the United States.  Defendants also argue that use of this information in forfeiture proceedings is compatible with the purpose for which it was collected, namely, identification of proceeds from the crimes of which Plaintiff was convicted.

Plaintiff does not offer any rebuttal to Defendants' assertion that Claims Seven and Eight should be dismissed under the "routine use" exception.  Moreover, the Court's own review of the facts and relevant statutory provisions confirms that the challenged disclosures fall squarely within that exception.  Not only was the disclosure in this instance intra-agency, the financial and employment information in the PSIR was directly relevant to the initiation of forfeiture proceedings by the United States.  Finally, use of the PSIR information to ensure that Plaintiff does not profit from his crime is compatible with

13

the purpose for which the records were collected.

Thus, the Court concludes that Claims Seven and Eight of the Amended Complaint fail to state a claim under the Privacy Act and must be dismissed.

<u>Claim Ten</u>

Claim Ten asserts a cause of action against the United States under the Federal Tort Claims Act (FTCA) for intentional interference with a contractual relationship.  Plaintiff alleges that the United States instituted a policy to "unduly scrutinize and harass the people of the [sic] Middle-Eastern origin and their financial activities."  (Am. Compl. at 24.)  Plaintiff asserts that this policy led federal agents to interfere in Plaintiff's contractual relations with Central Bank.  Plaintiff seeks damages in the amount of $4,007,900.

Defendants move to dismiss this claim because Plaintiff fails to invoke a waiver of the United States' sovereign immunity.  "Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 1370 (1990).  As Defendants point out, although the FTCA constitutes a limited waiver of sovereign immunity, it retains

immunity for certain claims arising from "interference with contractual rights." 28 U.S.C.A. § 2680(h) (West 2007); *see also, e.g.*, *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 522 (8th Cir. 2001) ("[C]laims for 'interference with contract rights' are not within the scope of the FTCA.").

Once again, Plaintiff does not offer any rebuttal to Defendants argument that Claim Ten should be dismissed based on sovereign immunity.  Because the FTCA clearly retains immunity for contractual interference claims, such as Plaintiff's, the Court concludes that Claim Ten must be dismissed for lack of subject matter jurisdiction.

## <u>ORDER</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's motion for appointed counsel is **denied**;

(2) Defendants' motion to dismiss Claim 1 of the First Amended Complaint is **denied**, and this claim will remain stayed pending further developments in the forfeiture case;

(3) Defendants' motion to dismiss Claims 2-7 and Claim 10 of the First Amended Complaint is **granted**;

(4) Defendants shall file an answer to all remaining claims in the First Amended Complaint within thirty days.

DATED this __6th__ day of August, 2007.

BY THE COURT:

_Tena Campbell_

_____
Tena Campbell, Chief Judge
United States District Court

16