**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| AHMAD R. SHAYESTEH,<br><br>          Plaintiff,<br><br>     v.<br><br>AARON RATY et al.,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:05-CV-85-TC<br><br>District Judge Tena Campbell |

Plaintiff, Ahmad R. Shayesteh, an inmate at the Federal
Correctional Institution in Fort Dix, New Jersey, filed this
lawsuit pro se and *in forma pauperis* under 28 U.S.C. § 1915.  See
28 U.S.C.A. § 1915(b).  This case is now before the Court on the
Federal Defendants' Motion for Summary Judgment.

**ANALYSIS**

**I. Factual Background**[1]

Plaintiff is an Iranian citizen and permanent resident of
the United States.  In January of 1995 Plaintiff rented a safe-
deposit box from Central Bank in Provo, Utah.  The following
June, Plaintiff was charged in a two-count indictment with
possession of a controlled substance with intent to distribute.

---

[1]  The facts presented here are drawn primarily from
Defendants' Memorandum in Support of Motion for Summary Judgment
(docket no. 53) and are largely undisputed.  The limited areas of
disagreement identified by Plaintiff are noted herein.

The charges stemmed from a consent search of Plaintiff's vehicle which turned up 632 grams of cocaine and approximately 2,000 grams of methamphetamine.  In August of 1996 Plaintiff was convicted on both counts, sentenced to 262 months in prison, and assessed a $10,000 fine.

On May 17, 2002, Defendant Garrard, a Special Agent with the Federal Bureau of Investigation (FBI), was contacted by a male representative from Central Bank who stated that the bank had found a large quantity of United States currency in a safe-deposit box after the box had become inactive.  The bank representative estimated the amount of currency at between $70,000 and $80,000 but did not mention any other contents of the box.  Garrard was advised that the box had been rented several years ago by a person named Ahmad R. Shayesteh.  The bank employee also provided Garrard with Shayesteh's date of birth and Social Security number during the call.  Using the information obtained from Central Bank, Garrard ran a criminal history check and learned of Plaintiff's drug conviction.  Through further investigation Garrard discovered where Plaintiff was incarcerated and that Plaintiff was originally arrested by the Drug Enforcement Agency (DEA).  Garrard then contacted the DEA's Salt Lake City office and spoke with Special Agent Raty who handled Plaintiff's criminal case.  Garrard relayed to Raty the

information about the safe-deposit box obtained from Central Bank.[2]

In February 2003 the United States filed a Verified Complaint for Forfeiture In Rem ("Forfeiture Complaint") seeking to forfeit $72,100 in U.S. currency found in Plaintiff's safe-deposit box. See United States v. $72,100 in U.S. Currency, No. 2:03-CV-140-DS, docket no. 1. Defendant Raty attested to the truthfulness of the Forfeiture Complaint which states in paragraph 10:

> On May 2, 2002 officials at Central Bank located at 75 North University Avenue, Provo, Utah (Central Bank), became suspicious of a safe deposit box because it had not been accessed since 1995. The number of the box was 1994, and was in the name of Ahmad Sheyestah. Central Bank personnel believed there was a bomb in the box and called the Federal Bureau of Investigation (FBI) to investigate. The FBI arrived but would not open the box and advised bank personnel to open it according to bank policy and agents would observe. Bank personnel opened the box and discovered approximately $80,000 in United States currency. A later count showed the

---

[2] Plaintiff's opposition memorandum (docket no. 57) generally disputes the version of events summarized in this paragraph, which are drawn from paragraphs 4 through 7 of Defendants' supporting memorandum (doc. no. 53), without identifying any specific facts in dispute. It appears Plaintiff disagrees with these facts only to the extent they contradict those presented in the Forfeiture Complaint. As discussed in more detail below, the Court does not view the Forfeiture Complaint as a valid basis for any genuine issue of material fact.

exact amount to be $72,100[.]

*Id.* at 3.  The Forfeiture Complaint does not specifically identify Garrard as the FBI agent that went to Central Bank. Instead, Garrard is first mentioned in paragraph 11 of the Forfeiture Complaint, which states: "On May 15, 2002, [Special Agent Raty] of the Drug Enforcement Agency (DEA) was contacted by Special Agent Gerard [sic] of the FBI concerning the safe deposit box.  SA Gerard conducted a criminal background check and discovered that Sheyestah [sic] was the target of a DEA investigation in 1995."  Id.  Garrard has filed a sworn Declaration stating that he did not have any role in the seizure of Plaintiff's safe-deposit box, nor is he aware of any other FBI employee being involved.  (Garrard Decl. at 3.)

## II. Procedural Background

On October 20, 2003, Plaintiff answered the Forfeiture Complaint and challenged the legality of the DEA's search and seizure of the contents of his safe-deposit box under the Fourth Amendment and the Right to Financial Privacy Act of 1978 (RFPA), see 12 U.S.C. §§ 3401-3422.  Plaintiff also sought damages of $4,007,900 under the Federal Tort Claims Act (FTCA), see 28 U.S.C. §§ 2671-80, claiming that the safe-deposit box originally contained $4,000,000 worth of diamonds and $80,000 in currency. On September 16, 2004, Plaintiff's FTCA claim was dismissed for

4

failure to exhaust administrative remedies.  Over three and a
half years later, on April 1, 2008, Plaintiff's forfeiture claim
was dismissed with prejudice under Rule 37 as a sanction for
refusing to cooperate with discovery.  See United States v.
$72,100 in U.S. Currency, No. 2:03-CV-0140-DS, 2008 WL 906762,
(D. Utah April 1, 2008); Fed. R. Civ. P. 37.  The Tenth Circuit
affirmed the dismissal on February 3, 2009.  See United States v.
$72,100 in U.S. Currency, No. 08-4085, 2009 WL 247837 (10th Cir.
Feb. 3, 2009).

Plaintiff filed the present suit on February 11, 2005.  On
September 20, 2006, the court dismissed many of the claims in
Plaintiff's original Complaint and granted leave to amend.
Plaintiff filed his First Amended Complaint on October 11, 2006,
asserting eleven claims.  Claims 1 through 4 alleged civil rights
violations under Bivens v. Six Unknown Agents of Fed. Bureau of
Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971); Claims 5 through
7 alleged violations of the Privacy Act, see 5 U.S.C. § 552a;
Claims 8 and 9 alleged violations of the RFPA; and, Claims 10 and
11 alleged claims under the FTCA.  On August 7, 2007, the court
dismissed Claims 2 through 7 and Claim 10 of the First Amended
Complaint.  The court also stayed Claim 1 at that time, pending
the outcome of the forfeiture proceedings.  On January 29, 2009,
following dismissal of Plaintiff's forfeiture claim, the stay in

5

this case was lifted and Defendants were allowed to renew their motion for summary judgment on all remaining claims.

There are currently four claims remaining in this case, including Claims 1, 8, 9, and 11 of the First Amended Complaint. Claim 1 alleges that Defendant Garrard and other unknown FBI agents violated Plaintiff's Fourth Amendment rights by unreasonably searching Plaintiff's safe-deposit box without a warrant.  Claim 8 alleges that the FBI violated § 3412 of the RFPA when Defendant Garrard transferred private financial information about Plaintiff and the contents of Plaintiff's safe-deposit box to Defendant Raty.  Claim 9 alleges that Defendants Garrard and Raty violated § 3402 of the RFPA by unlawfully obtaining documents and private financial information concerning Plaintiff without first serving him with a subpoena.  Finally, Claim 11 seeks damages from the United States of America under the FTCA for trespass, conversion, and negligence.

### III. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "One of the principal purposes of the

summary judgment rule is to isolate and dispose of factually
unsupported claims or defenses . . . ." <u>Cellotex v. Catrett</u>, 477
U.S. 317, 324 (1986).  Thus, Rule 56(a) of the Federal Rules of
Civil Procedure allows a party to move "with or without
supporting affidavits, for summary judgment on all or part of the
claim."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial
burden of showing "that there is an absence of evidence to
support the non-moving party's case."  <u>Cellotex</u>, 477 U.S. at 325.
This burden may be met merely by identifying portions of the
record which show an absence of evidence to support an essential
element of the opposing party's case.  <u>Johnson v. City of
Bountiful</u>, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the
burden then shifts to the non-movant to make a showing sufficient
to establish that there is a genuine issue of material fact
regarding the existence of [the disputed] element."  <u>Id.</u>  Federal
Rule of Civil Procedure 56(e) requires a nonmovant "that would
bear the burden of persuasion at trial" to "go beyond the
pleadings and 'set forth specific facts' that would be admissible
in evidence in the event of trial from which a rational trier of
fact could find for the nonmovant."  <u>Adler v. Wal-Mart Stores</u>,
144 F.3d 664, 670-71 (10th Cir. 1998).  The specific facts put

forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Thomas v. Wichita Coca-Cola Bottling, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

## B. Qualified Immunity

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, the Supreme Court has determined that immunity questions should be addressed at the earliest possible stage in litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process for making qualified immunity

determinations.  Under Saucier, courts were first required to
answer the following threshold question: "Taken in the light most
favorable to the party asserting the injury, do the facts alleged
show the officer's conduct violated a constitutional right?"  533
U.S. at 201.  If the answer to that question was affirmative,
courts next asked "whether the right was clearly established . .
. in light of the specific context of the case, not as a broad
general proposition."  Id.

More recently, in Pearson v. Callahan, 129 S. Ct. 808
(2009), the Supreme Court ruled that the "inflexible" two-step
inquiry mandated by Saucier is no longer required.  Under
Pearson, courts are now free to "exercise their sound discretion
in deciding which of the two prongs of the qualified immunity
analysis should be addressed first in light of the circumstances
in the particular case at hand."  Pearson, 129 S. Ct. at 818.
Thus, where it is possible to "rather quickly and easily decide
that there was no violation of a clearly established law" courts
can conserve judicial resources by "avoid[ing] the more difficult
question whether the relevant facts make out a constitutional
question at all."  Id. at 820.  This approach is also intended to
reduce the risk that "constitutional questions may be prematurely
and incorrectly decided in cases where they are not well
presented."  Id.

### IV. Defendants' Motion for Summary Judgment

### A. <u>Bivens</u> Claim (Claim 1)

Defendant Garrard seeks summary judgment on Plaintiff's search and seizure claim based on qualified immunity. Garrard asserts that Plaintiff has not met his burden of producing admissible evidence showing a genuine issue of material fact as to whether Garrard was involved with the search of Plaintiff's safe-deposit box. Garrard further asserts that even if Plaintiff could show that Garrard was involved, Plaintiff cannot show that his involvement was prohibited under clearly established law. Plaintiff contends that Garrard's motion must be denied for the same reasons the court previously denied his motion to dismiss.

In denying Garrard's previous motion to dismiss the court stated:

> Although Plaintiff has come forward with only minimal evidence and a somewhat vague legal theory showing a constitutional violation, the Court cannot conclude, based on the present record, that no genuine issue of material fact remains regarding whether Gerard [sic] violated Plaintiff's constitutional rights. In addition, Plaintiff's argument regarding the degree of government involvement in the initial warrantless search of the safe-deposit box is likely to arise in the forfeiture proceedings in relation to the admissibility of certain evidence. Premature resolution of Claim One in this case would likely have preclusive effect on those earlier-filed proceedings. Thus, the Court concludes that dismissal of Claim One is not appropriate on the present record, and this claim will remain stayed pending further developments in the forfeiture proceeding.

10

(Docket no. 47 at 7.)  Plaintiff selectively quotes from this language to contend that summary judgment on Claim 1 remains inappropriate because the factual record is essentially unchanged since Garrard's previous dispositive motion.  However, by taking the court's statements out of context Plaintiff misses the obvious import of its prior ruling.  As is clear from the full paragraph quoted above, the previous denial of Garrard's motion to dismiss was due, in large part, to concerns that a ruling on the issue might interfere with the ongoing forfeiture case.  Although the Court did not find any substantial evidence to support Plaintiff's position—in fact, it described Plaintiff's evidence as "minimal"—it found that judgment for Garrard at that time would have been "premature."  Now that the forfeiture case is entirely resolved the Court can freely evaluate the sufficiency of Plaintiff's evidence without fear of interfering with other litigation.

The only evidence presented by Plaintiff to support his allegation that Garrard was involved in illegally searching Plaintiff's safe-deposit box is the single sentence in the Forfeiture Complaint which states: "The FBI arrived [at the bank] but would not open the box and advised bank personnel to open it according to bank policy and agents would observe."  <u>United States v. $72,100 in U.S. Currency</u>, No. 2:03-CV-140-DS, docket

no. 1, at 3.  Plaintiff contends that because Garrard is
identified as the FBI agent who was initially contacted by
Central Bank it is plausible to infer that Garrard was also one
of the FBI agents who, according to the Forfeiture Complaint,
went to the bank and was involved with the search.  This argument
is unpersuasive.  Nowhere in the Forfeiture Complaint does it
state that Garrard personally went to the bank, or that he was
involved in any way with searching Plaintiff's safe-deposit box.
Moreover, Garrard has filed a sworn declaration stating that he
did not have any role in the seizure of Plaintiff's safe-deposit
box and he is not aware of any other FBI employee being involved.
(Garrard Decl. at 3.)  Garrard's Declaration is sufficient to
shift to Plaintiff the burden of showing that a genuine issue of
fact exists as to Garrard's involvement.

Plaintiff has not come forward with any evidence directly
contradicting Garrard's declaration, instead he offers only
speculation based on unsupported statements in the Forfeiture
Complaint.  While inferences from the Forfeiture Complaint may be
sufficient to state a claim at the pleading stage, or to caution
against dismissal while collateral forfeiture proceedings are
ongoing, they are not sufficient to stave off summary judgment
indefinitely.  Although on summary judgment the facts are viewed
in the light most favorable to the non-moving party, the Tenth

Circuit has explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

In this case, Plaintiff's version of events is based entirely on speculation from an extraneous statement contained in a second-hand account presented in the Forfeiture Complaint.  The purpose for the Forfeiture Complaint was merely to allege sufficient facts to initiate forfeiture proceedings against the contents of Plaintiff's safe-deposit box.  The Forfeiture Complaint was not intended as a sworn declaration by Raty, or as direct evidence of what occurred, instead, it merely presented allegations which could be tested through further proceedings. Although Defendant Raty attested to the truthfulness of the essential allegations of the Forfeiture Complaint, the sentence on which Plaintiff's speculation of Garrard's involvement rests was not central, or even necessary, to the forfeiture claim. Moreover, the Forfeiture Complaint does not state that Raty was present during all of the alleged events.  Instead, it is clear from the language of the document that the details about how the forfeited property was discovered were intended merely as

13

background, not as direct evidence of what occurred.

By contrast, Garrard's version of events is based entirely on first-hand knowledge and is presented in a sworn declaration admissible in evidence. Garrard affirmatively states that he did not have any role in the seizure of Plaintiff's safe-deposit box and he is not aware of any other FBI employee being involved. Plaintiff essentially urges the Court to disregard Garrard's sworn declaration in favor of an entirely contrary version of events based largely on speculation. Plaintiff not only seeks to credit the second-hand account attested to by Raty in the Forfeiture Complaint equally with the first-hand account sworn to by Garrard, he also goes one step further and simply infers that the Forfeiture Complaint's mention of "the FBI" actually refers to Defendant Garrard. The Court simply does not believe that a reasonable fact-finder could adopt such a view of the record in this case.

The Court concludes that Plaintiff has not met his burden on summary judgment of presenting admissible evidence showing a genuine issue of material fact as to whether Garrard was directly involved with the search or seizure of Plaintiff's safe-deposit box. Because Plaintiff has not offered sufficient evidence of Garrard's involvement, the Court need not address whether Garrard violated Plaintiff's constitutional rights or whether the

constitutional right at issue was well-established for qualified
immunity purposes.  Thus, Garrard's motion for summary judgment
is granted.

### B. RFPA Claims (Claims 8 and 9)

Defendants move for summary judgment on Plaintiff's RFPA
claims based on claim preclusion or res judicata.  Claim
preclusion prohibits a party from re-litigating "a claim or issue
that was actually decided or could have been decided in a
previous action."  Kenmen Engineering v. City of Union, 314 F.3d
468, 479 (10th Cir. 2002).  Claim preclusion prevents a party
from raising a legal claim in a second lawsuit if: "(1) both
suits involve the same parties or their privies, (2) the causes
of action in both suits arise from the same transaction, and (3)
the first suit resulted in a final judgment on the merits."
Barrey v. Asarco, Inc., 439 F.3d 636, 646 n.8 (10th Cir. 2006).
Where each of these requirements are met, preclusion is
appropriate unless the party seeking to avoid preclusion did not
have a "full and fair opportunity" to litigate the claims in the
prior suit.  MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th
Cir. 2005).

Defendants assert that each of the requirements for claim
preclusion are met in this instance based on Plaintiff's
participation in the forfeiture case.  Specifically, Defendants

15

assert that both Plaintiff and the United States were parties to the forfeiture action, that Plaintiff's present claims arose from the same transaction as the forfeiture case, and, that the forfeiture action resulted in a final judgment on the merits against Plaintiff.  Regarding the first element, Plaintiff contends he should not be considered a party to the forfeiture case because the actual defendant was "$72,100 in United States Currency."  As to the second element, Plaintiff asserts that the forfeiture action arose from Plaintiff's drug trafficking activities, not the search and seizure of his safe-deposit box which led to the present claims.  Finally, although Plaintiff admits that the forfeiture case resulted in a judgment on the merits, Plaintiff asserts that he was denied a full and fair opportunity to litigate his present claims in that suit.

Plaintiff's arguments against claim preclusion are unpersuasive.  First, although Plaintiff was not the named defendant in the forfeiture action Plaintiff asserted ownership of the property at issue and actively assumed control over the litigation, making Plaintiff a party to that action for purposes of claim preclusion.  See Taylor v. Sturgell, 128 S. Ct. 2161, 2172-73 (2008).  Second, Plaintiff's present RFPA claims and the forfeiture suit both arose out of the same relevant transaction, namely, the search and seizure of Plaintiff's safe-deposit box.

16

Third, Plaintiff concedes that the forfeiture action resulted in a final judgment on the merits under Rule 41(b).  See Fed. R. Civ. P. 41(b).  Finally, Plaintiff had a full and fair opportunity to litigate his claims in the forfeiture action but chose to squander that opportunity by failing to comply with discovery.  See United States v. $72,100 in U.S. Currency, No. 2:03-CV-140-DS, docket no. 30.

Thus, the Court finds that Plaintiff's RFPA claims are barred by claim preclusion and the United States' motion for summary judgment on these claims is granted.

### C. FTCA Claim (Claim 11)

The United States seeks summary judgment on Plaintiff's FTCA claim based on sovereign immunity.  "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (quotation omitted).  "The United States consents to be sued only when Congress unequivocally expresses in statutory text its intention to waive the United States' sovereign immunity." United States v. Richman (In re Talbot), 124 F.3d 1201, 1206 (10th Cir. 1997).

The FTCA provides a limited waiver of the United States'

17

sovereign immunity allowing the United States to be held liable to the same extent as a private party for the negligence or wrongful acts of its employees who are acting within the scope of their employment.  See Kosak v. United States, 465 U.S. 848, 851-52 (1984).  The FTCA's broad waiver of sovereign immunity, however, is subject to thirteen enumerated exceptions by which the United States retains its immunity from suit in certain circumstances.  One of these exceptions, found in 28 U.S.C. § 2680(c), includes:

> Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—
>
> > (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
> >
> > (2) the interest of the claimant was not forfeited;
> >
> > (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
> >
> > (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c) (emphasis added).  In other words, under §

2680(c) the United States has not waived sovereign immunity under the FTCA if (1) the claim arose "in respect of . . . the detention of . . . goods, merchandise or other property," (2) the detention was by a "law enforcement officer", Walkner v. United States, 43 F. App'x 340, 342 (10th Cir. 2002), and (3) the plaintiff cannot meet all four elements enumerated in section 2680(c)(1) to (4). Adeleke v. United States, 355 F.3d 144, 154 (2d Cir. 2004).

The Court addresses each of these issues in turn. First, Plaintiff's present claims clearly arose "in respect of . . . the detention of . . . goods, merchandise or other property." As recognized by the Second Circuit, the seizure of property for purposes of forfeiture qualifies as a "detention of goods" under § 2680(c). Id. Thus, Plaintiff's argument that his property was "seized" rather than "detained" is unavailing.

Second, the detention in this instance was clearly performed by law enforcement officers. The Supreme Court recently interpreted the phrase "any other law enforcement officer," as used in § 2680(c), to mean "law enforcement officers of whatever kind." Ali v. Federal Bureau of Prisons, 552 U.S. 214, 220 (2008). In adopting this interpretation the Court specifically rejected Plaintiff's argument that the term applies only to

customs or excise officers.   <u>Id.</u>

Finally, Plaintiff cannot satisfy each of the four elements in § 2680(c)(1)-(4).  Even assuming that Plaintiff could meet the first three elements, Plaintiff cannot satisfy the fourth element because he was convicted of a crime "for which the interest of the claimant in the property was <u>subject</u> to forfeiture under a Federal criminal forfeiture law."  28 U.S.C. § 2680(c)(4) (emphasis added).  The record shows that Plaintiff was convicted of Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), making him subject to the criminal forfeiture provisions of 21 U.S.C. § 881(a).  Although Plaintiff argues that his property was forfeited pursuant to civil—rather than criminal—statutes, Plaintiff's property was clearly "subject" to Federal criminal forfeiture laws as well.

In sum, the United States has not waived its sovereign immunity as to the allegations in Claim 11 of Plaintiff's First Amended Complaint and the Court lacks subject-matter jurisdiction over that claim.  Thus, the United States' motion for summary judgment on Plaintiff's FTCA claim is granted.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendant Garrard's motion for summary judgment on Claim 1 of Plaintiff's First Amended Complaint is **GRANTED**; and,

(2) the United States' motion for summary judgment on Claims 8, 9 and 11 of the First Amended Complaint is **GRANTED**.

DATED this 16th day of November, 2009.

BY THE COURT:

_____
TENA CAMPBELL, Chief Judge
United States District Court